# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

JAMES D PAHOUNDIS,

        Plaintiff,

  v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Case No. 2:16-CV-00826-ALM
JUDGE ALGENON L. MARBLEY
Magistrate Judge Jolson

## REPORT AND RECOMMENDATION

Plaintiff James D. Pahoundis brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB"). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's statement of errors be **OVERRULED** and judgment be entered in favor of the Commissioner.

    I.    BACKGROUND

        **A. Procedural History**

Plaintiff applied for a period of disability and DIB on March 23, 2012, alleging disability beginning on August 1, 2009. (Doc. 10, Tr. 11). His application was denied initially on October 16, 2012, and upon reconsideration on June 17, 2013. (*Id.*). An Administrative Law Judge ("the ALJ") held a video hearing on February 5, 2015, at which time Plaintiff and a vocational expert testified. (*Id.*, Tr. 26–52). Plaintiff declined his right to representation. (*Id.*, Tr. 11).

On July 31, 2015, the ALJ issued an unfavorable decision, concluding that Plaintiff was not disabled. In his opinion, he made clear that he found "no reason to reopen the claimaint's

prior Title XVI application, which was denied upon reconsideration on August 18, 2011." (Doc. 10, Tr. 11). The ALJ further explained that only the unadjudicated period, beginning August 19, 2011, would be considered, and "any discussion of the evidence prior to that time is for historical and contextual purposes only and does not constitute reopening." (*Id.*, Tr. 11). The ALJ found that Plaintiff had severe mental impairments, including psychotic disorders, ADHD (Attention Deficit/Hyperactivity Disorder), mood disorder and personality disorder. (*Id.*, Tr. 13–14).

The ALJ found that Plaintiff did not have an impairment or combination of impairments that satisfied any listed impairment and proceeded through the sequential process, assessing the relevant evidence and considered the impact of the combination of Plaintiff's impairments on his ability to work. (*Id.*, Tr. 14–18). *See* 20 C.F.R. §§ 416.927(e)(2), 416.945(a). The ALJ next concluded that Plaintiff retained the RFC to perform the full range of work at all exertional levels with the following limitations: he was limited to simple tasks, with no interaction with the public in the work setting; only occasional interaction with coworkers and supervisors; and no strict production requirements, such as that which would be required for an assembly line worker. (*Id.*, Tr. 15, 17).

The Appeals Council then denied Plaintiff's request for review making the ALJ's decision the final decision of the Commissioner. (Doc. 10, Tr. 1). Proceeding *pro se*, Plaintiff appealed to this Court. (Docs. 4, 5). He filed a Statement of Specific Errors on January 27, 2017 (Doc. 13), and the Commissioner responded on March 15, 2017 (Doc. 15). Plaintiff did not file a reply brief.

### B. Relevant Records

Consultative examiner Marc Miller, Ph.D., examined Plaintiff in April 2011, at the request of the state agency. (Doc. 10, Tr. 544). Dr, Miller's report includes a summary of

Plaintiff's history including a "quite lengthy" legal history (a juvenile record and prison time), past substance abuse, and a high school education in learning disabled classes and vocational program in auto mechanics. (*Id.*, Tr. 545; *see also id.*, Tr. 33). The report also notes that Plaintiff drove himself to the examination. (*Id.*, Tr. 546). Dr. Miller ultimately opined that Plaintiff had no significant impairment in his ability to understand, remember, and carry out job instructions and that Plaintiff could follow one- or two-step directions and may have difficulty with complex concepts. (*Id.*, Tr. 548). Dr. Miller also opined that Plaintiff may have "some difficulty" interacting with coworkers, supervisors and the public, and had significant difficulty with maintaining attention and concentration and with dealing with stress and pressure. (*Id.*).

The ALJ also considered the September 11, 2012, opinion of consultative examiner, Christopher C. Ward, Ph.D. (Doc. 10, Tr. 16-18 (citing *id.*, Tr. 558–63)). Dr. Ward opined that Plaintiff's abstract reasoning skills were within normal limits; his short-term memory skills were below average and may lead to difficulty remembering instructions; and he had difficulty completing serial tasks, which suggested difficulty in maintaining attention and focus and he displayed indications of distraction during the evaluation. (*Id.*, Tr. 562). He also opined that Plaintiff described impacts of mental health problems, which may lead to emotional instability when presented with critical supervisory feedback and difficulty developing and maintaining appropriate co-worker relationships; and his symptoms may compromise his ability to respond to work pressures and his focus and delusional difficulties may lead to difficulty maintaining interpersonal relationships. (*Id.*, Tr. 563). Drs. Umana and Warren also reviewed Dr. Ward's opinion as part of their record review. (*See id.*, Tr. 54, 64, 72, 81).

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To that end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III. DISCUSSION

Plaintiff appears to raise two arguments. He disputes the ALJ's mental RFC determination and also alleges that he has a vision impairment that is disabling. (*See* Doc. 13).

### A. Mental RFC Determination

It was the ALJ's responsibility to determine Plaintiff's residual functional capacity (RFC), based on the evidence as a whole. *See* 20 C.F.R. § 416.946(c) ("[T]he administrative law judge . . . is responsible for assessing your residual functional capacity"); SSR 96-5p. In addition, the ALJ was responsible for making factual and legal determinations, and for weighing the record evidence and resolving conflicts therein. *See Richardson*, 402 U.S. at 399. Here, the ALJ found that Plaintiff had severe mental impairments, including psychotic disorders, ADHD (Attention Deficit/Hyperactivity Disorder), mood disorder and personality disorder. (Doc. 10, Tr. 13–14). However, the ALJ ultimately concluded that Plaintiff retained the RFC to perform

the full range of work at all exertional levels with the following limitations: he was limited to simple tasks, with no interaction with the public in the work setting; only occasional interaction with coworkers and supervisors; and no strict production requirements, such as that which would be required for an assembly line worker. (Doc. 10, Tr. 15, 17).

Plaintiff contends that the ALJ's RFC analysis is flawed. (*See generally* Doc. 13). For this argument, Plaintiff seems to rely on Dr. Miller's opinion. In April 2011, Dr. Miller evaluated Plaintiff at the request of the state agency. (Doc. 10, Tr. 544). Dr. Miller opined that Plaintiff had no significant impairment in his ability to understand, remember, and carry out job instructions, and that Plaintiff could follow one- or two-step directions and may have difficulty with complex concepts. (*Id.*, Tr. 548). Dr. Miller also found that Plaintiff may have "some difficulty" interacting with coworkers, supervisors and the public, and had significant difficulty with maintaining attention and concentration and with dealing with stress and pressure. (*Id.*, Tr. 548).

While the ALJ did not discuss Dr. Miller's evaluation, the ALJ made clear that he was considering Plaintiff's impairment only during the unadjudicated period, beginning August 19, 2011. (*Id.*, Tr. 11). Because Dr. Miller's evaluation predates the relevant period, it is "not surprising" that the ALJ did not specifically discuss the opinion. *See Davis v. Comm'r of Soc. Sec.*, No. 2:15-cv-12644, 2016 U.S. Dist. LEXIS 111591 *24 ( E.D. Mich. July 29, 2016) (noting that "the absence of express discussion of these items is not surprising because these statements pre-date Plaintiff's alleged September 1, 2011 onset of disability"); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance.").

5

Moreover, the Court finds that substantial evidence supports the ALJ's mental RFC determination. The ALJ expressly considered the September 11, 2012, opinion of consultative examiner, Christopher C. Ward, Ph.D. (Doc. 10, Tr. 16–18 (relying on *id.*, Tr. 558–63)). Dr. Ward opined that Plaintiff's abstract reasoning skills were within normal limits; his short-term memory skills were below average and may lead to difficulty remembering instructions; and he had difficulty completing serial tasks, which suggested difficulty in maintaining attention and focus and he displayed indications of distraction during the evaluation. (*Id.*, Tr. 562). He also opined that Plaintiff described impacts of mental health problems, which may lead to emotional instability when presented with critical supervisory feedback and difficulty developing and maintaining appropriate co-worker relationships; and his symptoms may compromise his ability to respond to work pressures and his focus and delusional difficulties may lead to difficulty maintaining interpersonal relationships. (*Id.*, Tr. 563).

The ALJ assigned partial weight to Dr. Ward's opinion:

> The undersigned has also considered the statements of Dr. Christopher Ward, a consultative examiner, that the claimant may have difficulty remembering instructions, may have difficulty maintaining attention and concentration, and may have difficulty interacting with others (lOF/5-6). However, the undersigned notes that these statements are general statements regarding the claimant's symptoms and do not resemble an opinion written in functional terms.
>
> Nevertheless, to the extent these statements represent Dr. Ward's opinions regarding the claimant's functionality, they are given partial weight, as the record documents the claimant's observed difficulty with some mental status tasks and with his [reports] regarding his ability to get along with others. Still, the overall record, as evidenced by recent notations that the claimant maintains normal attention and concentration and by the claimant's ability to shop in public, observed normal speech, and observed cooperative behavior, suggests the ability to perform the limited range of work described above.

(*Id.*, Tr. 18.)

The ALJ also considered and gave "great weight" to the state agency reviewing

psychologists, Roseanne Umana, Ph.D., and Vicki Warren, Ph.D. (*Id.*, Tr. 17). These doctors reviewed the record evidence, including Dr. Miller's and Dr's Ward's reports. (*See id.*) Drs. Umana and Warren concluded that Plaintiff could understand, remember and carry out simple instructions and even some that were complex; had adequate concentration for routine, repetitive tasks; had adequate social functioning for superficial and occasional interactions; and could adapt to work settings in which duties were routine and predictable. (*Id.*, Tr. 64–66; 82–84). The ALJ appropriately considered these opinions. *See* 20 C.F.R. § 416.927(e)(2)(i) ("Program physicians, psychologists, and other medical specialists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.").

The ALJ additionally considered treatment notes in the record and explained that the objective medical evidence did not demonstrate that Plaintiff had debilitating mental limitations. (*Id.*, Tr. 16–18). For example, while there was objective evidence that demonstrated some abnormal findings, Plaintiff's symptoms improved with treatment and his clinical findings demonstrated that Plaintiff was cooperative; displayed normal speech; was alert and oriented; had average arithmetic and abstract reasoning skills; and could perform tests of attention and concentration. (*Id.*, Tr. 16–17, *see e.g.*, *id.*, Tr. 560-62, 580, 582). In addition, based on Plaintiff's Global Assessment of Functioning scores, which ranged from 58 to 65, Plaintiff's symptoms were only "mild" to "moderate" in severity. (*Id.*, Tr. (relying on *id.*, Tr. 17, 562, 578, 581, 604, 612)). Further, by 2014, treatment notes demonstrated that Plaintiff had normal speech; normal thought and concentration; and appropriate mood and affect. (*Id.*, Tr. 17, (relying on *id.*, Tr. 602-03)). During physical consultative examinations, it was noted that Plaintiff had normal intellectual functioning, could follow simple commands and instructions without difficulty and could be heard and understood without difficulty. (*Id.*, Tr. 17,

551, 589).

In addition, the ALJ noted that Plaintiff's self-reported activities did not support a finding of disability. (*Id.*, Tr. 17). Plaintiff's activities included preparing meals, riding a bicycle, driving, shopping, completing household chores, cutting wet wood with a chainsaw and playing video games. (Tr. 14, 17, 35–38, 39–40, 206, 560, 582). Although Plaintiff alleges that his activities, such as cutting wood, should not have been considered in assessing his allegations (Doc. 13 at 5–6), Plaintiff's activities undermined his alleged limitations, and the ALJ properly considered Plaintiff's activities along with the other record evidence. *See* 20 C.F.R. § 416.929(c)(3)(i) (permitting an ALJ may consider activities when assessing a claimant's subjective complaints); s*ee Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("[A]n ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability."). Accordingly, the ALJ reasonably assessed Plaintiff's allegations and considered the limitations substantiated by the record.

Finally, as to Plaintiff's argument that he was improperly evaluated by a psychologist who "benefit[ed]" the agency (Doc. 13 at 5), there is great latitude in deciding whether a consultative examination ("CE") is required in order to make a proper resolution of a disability claim and who to choose as the qualified medical source for the CE. *See* 20 C.F.R. § 416.919 (the decision to purchase a CE will be made on an individual basis); 20 C.F.R. § 416.919a(b) (A consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on a claim.); 20 C.F.R. § 416.919g (agency chooses qualified medical source for CE). In this case, the Agency determined that sending Plaintiff to consultative evaluations was necessary to adjudicate this matter and to provide

sufficient evidence to reach a decision about Plaintiff's abilities. That was not error.

In sum, substantial evidence supports the ALJ's mental RFC finding, and the Court finds Plaintiff's argument unpersuasive.

### B. Alleged Vision Impairment

Albeit cursory, Plaintiff appears to claim that his cataracts provide a basis for disability benefits. (Doc. 13 at 5). However, the medical records show that Plaintiff has no vision impairments. (*See, e.g.*, Doc. 10, Tr. 585). And Plaintiff has not otherwise offered evidence related to this alleged impairment. Accordingly, the Court rejects this argument.

## IV. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED**, and that judgment be entered in favor of Defendant.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1). Failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also

operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 152–53 (1985).

    IT IS SO ORDERED.

Date: April 20, 2017                /s/Kimbery A. Jolson
                                          KIMBERLY A. JOLSON
                                          UNITED STATES MAGISTRATE JUDGE